1  WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | ) CR 12-1155-002-TUC-JGZ (HCE) |
|---|---|
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Albert Uriz La Fleur, | ) |
| Defendant. | ) |

Pending before the Court is a Motion to Suppress filed by Defendant Albert Uriz La Fleur. (Doc. 25.) Defendant asserts government agents lacked reasonable suspicion to stop the vehicle in which he was a passenger and in which marijuana was found. In its Response, the United States claims the stop of the vehicle was lawful because it was based on a corroborated tip, from an unidentified source, that the vehicle was being used to pick up and transport marijuana. (Doc. 33.)

This matter was set for evidentiary hearing and evidence was heard on September 19, 2012. Defendant was present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

Having now considered the matter, the Court will deny Defendant's Motion to Suppress.

| | |
|---|---|
| 1 | **EVIDENCE PRESENTED AT SUPPRESSION HEARING** |

On April 17, 2012, at approximately 2:00 p.m., Supervisory Border Patrol Agent William Leafstone received information from a Border Patrol Intelligence agent that a silver Pontiac sedan, bearing license plate AVN4128, would be traveling on Leslie Canyon Road and would make a stop between mile markers 4 and 8 to load the vehicle with marijuana. The Intelligence Officer did not reveal to Agent Leafstone the source of the tip. Leslie Canyon Road is a two-lane road with light traffic located in the Douglas, Arizona, area. The area is sparsely populated and is known to be utilized for alien and drug smuggling. Mile marker 1 of Leslie Canyon Road is approximately two miles north of the United States' international border with Mexico.

Around 3 p.m., Border Patrol Agents Jory Filzek and Tanner Branham responded to mile markers 2 and 8, respectively, to conduct surveillance. Around mile marker 8, Agent Branham climbed to a high vantage point on a hill on the west side of Leslie Canyon Road to observe northbound traffic. Agent Filzek drove south towards mile marker 2. At approximately 3:15 p.m., Agent Filzek observed a silver sedan pass his location traveling north toward mile marker 8, and he notified Agent Branham. Aided by binoculars, Agent Branham observed a silver Pontiac sedan approach and stop abruptly on the east shoulder of Leslie Canyon Road north of mile marker 7. Agent Branham observed a person dressed in camouflage clothing emerge from the desert brush and approach the sedan. Agent Branham testified that in his experience narcotics smugglers typically wear camouflage to avoid being detected by law enforcement. The individual in camouflage stood outside the passenger side of the vehicle, close to the door, and appeared to converse with the occupants of the vehicle. Agent Branham then observed the individual open the passenger side rear door and reach into the back seat. After the door was closed, the sedan made a U-turn and traveled south on Leslie Canyon Road - the direction from which it had come. Agent Branham informed other agents that he believed the vehicle had been loaded with drugs.

After receiving this information, Agent Filzek drove north on Leslie Canyon Road directly toward the suspected vehicle. At approximately mile marker 4, Agent Filzek

recognized the silver sedan rapidly approaching him as the same vehicle he had seen driving northbound minutes earlier. As the vehicles approached one another, Agent Filzek slowed to 15-20 miles per hour. He observed that the driver, later identified as co-defendant Angelo Maurice Alvarado, also slowed his vehicle, and almost brought it to a complete stop in the middle of the road. The posted speed limit on Leslie Road is 45 miles per hour. The cars were hardly moving at all. Agent Filzek testified that it felt like a stand off. He could see two men in the car - the driver and a passenger who was later identified as Defendant La Fleur. As Agent Filzek drove past Defendants, he observed both men turn and look back at him. Agent Filzek made a U-turn, followed the sedan, and corroborated that the license plate matched the information provided by Agent Leafstone. Neither Agent Barnham nor Agent Filzek saw any other silver sedans during their surveillance.

Agent Filzek activated his lights and sirens. Through the open windows of the sedan, Agent Filzek saw the reaction of the occupants. The driver lifted his hands off the steering wheel as if in resignation. The passenger appeared to be emphatically gesturing towards the road as if the driver should continue driving. Agent Filzek perceived that there was a disagreement between the driver and the passenger as to how to respond to Agent Filzek's lights and siren. The driver did not pull over although there were pull outs along the shoulder of the road. Instead, the sedan continued down the road at the speed limit for approximately a mile while Agent Filzek pursued with his emergency equipment activated.

Supervisory Border Patrol Agent Paul Warwick was monitoring the incident from a parked location near the intersection of West Glenn and Leslie Canyon Road. From the information he heard on the radio, he determined there was sufficient information to warrant stopping the vehicle and he had directed Agent Filzek to turn on his lights and activate his siren. He could see the sedan approaching the intersection and saw and heard Agent Filzek turn on his lights and siren north of the intersection. As the sedan and Agent Filzek drove southbound on Leslie Canyon Road through the intersection at West Glenn, Agent Warwick pulled his service vehicle in behind Agent Filzek to assist. Agent Warwick determined that the sedan was not going to yield so he drove around Agent Filzek and Defendants' vehicles,

pulled in front of the sedan and applied his brakes to come to a slow stop, boxing in the sedan and forcing it to stop. As Agent Filzek approached Defendants' vehicle, he saw through the rear window bundles of what appeared to be marijuana. Defendants were identified and arrested.

## ANALYSIS

Defendant La Fleur moves for suppression of the evidence, contending that agents stopped his vehicle without reasonable suspicion, in violation of his Fourth Amendment rights.[1] The Court finds that the stop of the sedan was supported by the agents' reasonable suspicion that its occupants were involved in criminal activity.

The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops that fall short of traditional arrest. *See Terry v. Ohio*, 392 U.S. 1, 9 (1968). The Fourth Amendment's prohibition against unreasonable searches and seizures applies to investigatory traffic stops. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). To justify an investigative stop, a police officer must have reasonable suspicion that a suspect is involved in criminal activity. *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006).

In making a reasonable suspicion determination, the Court looks to the totality of the circumstances to evaluate whether the detaining officers have a "particularized and objective basis" for suspecting legal wrongdoing. *Arvizu,* 534 U.S. at 273. Officers' reasonable suspicion may be informed by the officers' own experience and specialized training; officers

---

[1] Although the Defendant's Motion to Suppress argues only that the officers lacked reasonable suspicion to stop the sedan, at the suppression hearing, Defendant asserted that probable cause was the standard to be applied to the stop. Defendant's assertion is based on agents' testimony that the stop was a "felony stop" which was supported by probable cause. The Court disagrees. "[T]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops." *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000). When determining the propriety of an officer's actions under the Fourth Amendment, the Court engages in an objective assessment of the officer's actions in light of the facts and circumstances known to him. *Scott v. United States*, 436 U.S. 128, 137 (1978). The Court may independently scrutinize the record to determine whether the applicable legal standard was satisfied regardless of the officer's belief. *See United States v. Moses*, 796 F.2d 281, 285 (9th Cir. 1986).

may make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *Id*. "Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). "Officers may consider the characteristics of the area in which they encounter a vehicle. Its proximity to the border, the usual patterns of traffic on the particular road, and previous experience with alien traffic are all relevant." *Id*. at 884-885 (citations omitted). "Aspects of the vehicle itself may justify suspicion." *Id*. The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officers involved. *Whren v. United States*, 517 U.S. 806, 814 (1996).

Furthermore, an informant's tip can provide a basis for a finding of reasonable suspicion if the tip is reliable. *See United States v. Rowland*, 464 F.3d 899, 907-08 (9th Cir. 2006). Several factors bear on reliability. A known informant's tip is more reliable than an anonymous informant's tip. *Id.* An informant with a proven track record of reliability is considered more reliable than an unproven informant. *Id.* An informant's tip is considered more reliable if the informant reveals how the informant came to know the information. *Id.* Finally, a tip that provides detailed predictive information about future events that is corroborated by police observation may be considered reliable. *Id.* Predictive information that reveals a detailed knowledge of an individual's intimate affairs is more reliable than predictive information that could be observed by the general public and is more valuable if it relates to suspicious activities. *Id.*

The Court concludes that the informant's detailed predictive information, which was corroborated by the agents' observations, provided the agents with ample reasonable suspicion that the occupants of the sedan were engaged in criminal activity. Before Defendants' vehicle was stopped, agents confirmed the following facts provided by the informant: Defendants were driving a silver Pontiac sedan; Defendants traveled along Leslie Canyon Road; Defendants stopped between mile markers 4 and 8; during the stop, it appeared that the vehicle was being loaded with drugs - a man in camouflage emerged from

- 5 -

the desert, opened the back passenger door and appeared to put something inside; and the vehicle bore the exact license plate. In addition to the information corroborating the tip, the load up location was on a remote desert road known for narcotics and alien trafficking, the person who appeared to load the sedan was wearing camouflage which is typically used by smugglers to avoid detection, and after being loaded, the sedan made a U-turn and headed south towards Douglas as if the only purpose for its occupants to travel on Leslie Canyon Road was to have the car loaded. Finally, the Defendants' peculiar response to seeing Agent Filzek and to his activating his lights and sirens, as well as the driver's failure to yield to Agent Filzek further substantiated the agents' reasonable suspicion that Defendants were engaged in criminal activity.

In sum, all of these circumstances, taken together, amount to a reasonable suspicion that the occupants of the sedan were engaged in criminal conduct. *See United States v. Santamaria-Hernandez*, 968 F.2d 980, 984 (9th Cir. 1992) (finding reasonable suspicion for the stop where agents observed conduct consistent with alien smuggling in an area known as a notorious smuggling area, defendant attempted to evade agents following his vehicle and failed to yield to agents); *United States v. Smith*, 217 F.3d 746, 750 (9th Cir. 2000) (evasive actions contribute to the totality of circumstances suggesting reasonable suspicion).

Accordingly, IT IS ORDERED that Defendant's Motion to Suppress (Doc. 25) is DENIED.

Dated this 20th day of September, 2012.

_____
Jennifer G. Zipps
United States District Judge